IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(NORTHERN DIVISION)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | } | |
| PLAINTIFF | } | |
| | } | |
| V. | } | CASE NUMBER 2:05CR137-F |
| | } | |
| GEORGE DAVID SALUM III, | } | |
| DEFENDANT | } | |

**MEMORANDUM IN SUPPORT OF THE
DEFENDANT'S MOTION TO DISMISS**

**IN RE: COUNT 1.**

Count 1 of the indictment seeks to charge an offense under Title 18, United States Code

Sections 1503 and 1502. The charge under Count 1, reads as follows:

That from in or about June 2004 through in or about October 2004, the defendant,

**GEORGE DAVID SALUM III,**

aided, abetted, counseled and induced by others known and unknown to the Grand Jury, did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in *United States v. Leon Carmichael and Freddie Williams,* Crim. No.  2:03-cr-259- T, in the United States District Court for the Middle District of Alabama, by providing the MPD personnel file and photograph of government witness David DeJohn and NCIC/ ACJIS database criminal histories and backgrounds of prospective government witnesses to Johnny G. White, Jr., whom the defendant knew to be employed on behalf of federal criminal defendant Carmichael, knowing that White intended to provide the personnel file; photograph, and NCIC/ACJIS material to Carmichael and/or his counsel for use in attempting to impeach or to discredit DeJohn and to intimidate DeJohn and other prospective government witnesses; all in violation of Title 18, United States Code, Sections 1503 and 2.

Title 18, United States Code Section1502, reads as follows:

§ 1502.  Resistance to extradition agent

Whoever knowingly and willfully obstructs, resists, or opposes an extradition agent of the United States in the execution of his duties, shall be fined under this

title or imprisoned not more than one year, or both.

Nothing in the indictment refers to extradition or extradition agents. Therefore, Count 1 does not

state any offense under 18, United States Code Section1502.

The bulk of Title 18, United States Code Section 1503, refers to efforts to influence or

injure judicial officers or jurors. Nothing in count 1 suggests any effort by the Defendant or his

alleged associates to influence or injure any judicial officer or juror. Therefore, the only portion

under which might cover the facts attributed to the defendant and his alleged associates is the

"omnibus clause", which reads as follows:

> (a) Whoever... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b)....

Nothing in the indictment suggests that the Defendant or his alleged associates made any threats

or used any force. Therefore, these alternatives are irrelevant to the indictment.

"...'[C]orruptly' is used for the purpose of 'forbidding those acts done with the intent to

secure an *unlawful* benefit either for oneself or for another... .'" (United States v. Brenson, 104

F.3d 1267, at 33-34, [11th. Cir, 1997]; cert. den. *sub nom* Brenson v. United States, 522 U.S.

884, 139 L. Ed. 2d 148, 118 S. Ct. 214, [1997]; emphasis supplied.) Count 1 suggests no benefit

to the Defendant. The only benefit to anyone would be to Carmichael, his attorney, and/or his

attorney's investigator. But, was that benefit "unlawful"?

### A.

### COUNT 1 IS DUPLICITOUS AND MULTIFARIOUS.

According to the indictment, the Defendant provided information to,

> ...[Attorney's investigator] Johnny G. White, Jr., whom the defendant knew to be employed on behalf of federal criminal defendant Carmichael, knowing that

White intended to provide the personnel file; photograph, and NCIC/ACJIS material to Carmichael and/or his counsel for use in attempting to *impeach* or to *discredit* DeJohn and to *intimidate* DeJohn and other prospective government witnesses... . (Emphasis supplied.)

Is an effort by a criminal defendant's attorney to impeach and discredit prosecution witnesses unlawful? Isn't this what criminal defense attorneys are supposed to do? Perhaps more to the point, does an effort by a criminal defense attorney and those associated with him or her to obtain information to be used in cross-examining prosecution witnesses, constitute an act which, "...influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the *due* administration of justice... ." (Emphasis supplied.), within the meaning of Title 18, United States Code Section 1503? Such efforts are an essential part of the *due* administration of justice. Therefore, providing information to Carmichael's attorney, an officer of the court, which could be used in impeaching and/or discrediting government witnesses, the Defendant conferred no *unlawful* benefit to Carmichael, his attorney, or the attorney's investigator. Such action would, therefore, not be corrupt. And would not constitute a violation of Title 18, United States Code Section 1503.

Yet, under Count 1, the Defendant can be convicted of obstruction of justice on proof that he provided information, which could be used in cross-examining prosecution witnesses, even if there is not a scintilla of evidence that he undertook to intimidate any witness. In charging both lawful and presumably unlawful conduct in the same count, Count 1 is duplicitous and multifarious, and for that reason should be dismissed.

**B.**

**COUNT 1 FAILS TO STATE AN OFFENSE.**

Of course, intimidating a witness would be unlawful and a violation of Title 18, United States Code Section 1503, if the intimidation, "...influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice... ." Count 1 alleges that the Defendant released information to the attorney's investigator, "... to intimidate DeJohn and other prospective government witnesses... ." The count does not, however, suggest how the release of the information intimidated or could be reasonably expected to intimidate any witness.

There is no suggestion that the information was false. The information consisted of a photograph of the undercover agent and criminal histories of other prosecution witnesses. Surly these witnesses, the federal investigators, and the federal prosecutors all knew what the undercover officer looked like and were familiar with the other witnesses' criminal histories.

The introduction to count 1, includes a paragraph 9, which reads as follows:

> ...9. After the return of the indictment against him, Carmichael and others set up a website, "Carmichaelcase.com," which posted the photographs of and solicited information about informants and agents. When first posted, the website identified DeJohn by name, and noted "Picture Coming." Three photographs of DeJohn were later posted to the website, including DeJohn's official MPD personnel file photograph... .

The indictment, however, does not suggest how a website soliciting information constitutes intimidation.

More to the point, the indictment does not suggest that the Defendant had any knowledge of the website. Indeed, the information allegedly released by the defendant had no impact on the website, except, according to the indictment, one of three photographs.

It is evident from the allegations of Count 1 that the actions attributed to the Defendant

could not reasonably have been expected to intimidate any witness.

The indictment accuses the Defendant of releasing information to the defense in the <u>Carmichael</u> case. This information may have been useful to Carmichael's defense attorney in cross-examining government witnesses. As argued in the previous sub-section, this is not a violation of Title 18, <u>United States Code</u> Section 1503. The claim that the Defendant's actions intimidated witnesses is a mere conclusory allegation. In releasing information to an officer of the federal court, the Defendant could have reasonably foreseen that his action would result in intimidation and, so far as is alleged in the indictment, there was no intimidation.

**COUNT I SHOULD BE DISMISSED BECAUSE THE INDICTMENT DOES NOT CHARGE AN OFFENSE UNDER THE STATUTE (BECAUSE IT IS NOT CORRUPT TO IMPEACH OR DISCREDIT A WITNESS), BUT TO THE EXTENT THE INDICTMENT DOES CHARGE A VIOLATION OF THE STATUTE, THE STATUTE IS VAGUE AND/OR OVERBROAD**

The statute Title 18, <u>United States Code</u>, Section 1502 - 1503, as applied to the facts of the indictment is vague and over broad, in violation of the Fourteenth Amendment and First Amendment of the United States Constitution.

According to <u>Civil Liberties Under the Constitution</u>, 6th Edition by Abernathy and Perry (University of South Carolina Press, 1993), in its chapter on ***Freedom of Speech, Press, and Assembly***, pages 237 and 238, the "void for vagueness" and "void for over breadth", doctrines address direct and separate problems in statutory drafting. **"The vagueness doctrine applies when the law is written in such ambiguous terms that the citizen cannot divine just what conduct is prohibited, and thus there is no "ascertainable standard or guilt." The doctrine of "over breadth" applies when a statute, even though clearly written, punishes**

**both conduct that can legitimately be proscribed and conduct that is constitutionally**

**protected.**

Of course, a statute may be held defective under both doctrines, as was the case in ***Coates***

***v Cincinnati***, 402 U.S. 611 (1971).  Coates and others were convicted of violating a Cincinnati

ordinance making it a criminal offense for **"three or more persons to assemble . . . on any of**

**the sidewalks . . . and there conduct themselves in a manner annoying to person passing**

**by."**   The record showed only that Coates was a student involved in a demonstration and the

other persons were pickets involved in a labor dispute.

In holding the ordinance unconstitutional on its face, Justice Stewart, for the majority,

stated:

> **"[T]he only construction put upon the ordinance by the state court was its unexplained conclusion that "the standard of conduct which it specifies is not dependent upon each complainant's sensitivity." ... But the court did not indicate upon whose sensitivity a violation does depend - the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man.**
> **We are thus relegated, at best, to the words of the ordinance itself.  If three or more people meet together on a sidewalk or street corner, they must conduct themselves so as not to annoy any police officer or other person who should happen to pass by.  In our opinion this ordinance is unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct.**
> **Conduct that annoys some people does not annoy others.  Thus, the ordinance is vague, not in the sense that it requires a person to confirm his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.  As a result, "men of common intelligence must necessarily guess at its meaning." ...**
> **It is said that the ordinance is broad enough to encompass many types of conduct clearly within the city's**

> constitutional power to prohibit.  And so, indeed, it is.  The city
> is free to prevent people from blocking sidewalks, obstructing
> traffic, littering streets, committing assaults, or engaging in
> countless other forms of antisocial conduct.  It can do so
> through the enactment and enforcement of ordinances directed
> with reasonable specificity toward the conduct to be prohibited
>     ... It cannot constitutionally do so through the enactment
> and enforcement of an ordinance whose violation may entirely
> depend upon whether or not a policeman is annoyed....
>     ... The First and Fourteenth Amendments do not permit a
> State to make criminal the exercise of the right of assembly
> simply because its exercise may be "annoying" to some people.
> If this were not the rule, the right of the people together in
> public places for social or political purposes would be
> continually subject to summary suspension through the good-
> faith enforcement of a prohibition against annoying conduct...
>         The ordinance before us makes a crime out of what
> under the Constitution cannot be a crime.  It is aimed directly
> at activity protected by the Constitution.  We need not lament
> that we do not have before us the details of the conduct found
> to be annoying.  It is the ordinance on its face that sets the
> standard of conduct and wars against transgression."

In the instant case, Count I of the indictment is both vague and overbroad.  It charges

Defendant, Salum, with corruptly influencing, obstructing and impeding the due administration

of justice in United States vs. Leon Carmichael and Freddie Williams, by providing MPD

personnel file and photograph of a government witness, David DeJohn, and NCIC/ACJIS

database criminal histories and backgrounds of prospective government witnesses to Johnny G.

White, Jr, whom the defendant knew to be employed by Defendant, Carmichael, knowing that

White intended to provide the personnel file, photograph, and NCIC/ACJIS material to

Carmichael and/or his counsel for use in **attempting to impeach or discredit DeJohn and to**

**intimidate DeJohn and other prospective government witnesses**. (Emphasis added)

Of course, Defendant, Salum, denies knowing that Johnny White was employed on

behalf of Federal criminal Carmichael, but, for purposes of this challenge to the indictment, let

us assume arguendo that Salum did know that Johnny White was so employed.  **The purpose of this overbreadth challenge is that even if Salum knowingly provided personnel file material and photograph to Carmichael's Counsel for attempting to impeach or discredit to DeJohn, such should not be "an obstruction of the due administration of justice".**

What the government prosecution is arguing here is that anything interferes with a conviction is somehow an obstruction of the due administration of justice.  **That is too narrow a construction of the word "justice".   Shouldn't justice also include a search for the truth, with the possibility of an acquittal?**  How can "attempting to impeach or discredit DeJohn" be an obstruction of justice when that is simply what good defense lawyers are suppose to do, in properly defending their clients?

Further, it can hardly be said that an improper purpose of this activity of releasing photographs and files would be to intimidate DeJohn as a witness, when in fact U.S. District Judge Myron Thompson and U.S. Magistrate Deloris Boyd have ruled that it was acceptable for defense attorney Steve Glassroth to maintain a web site with names and photographs of potential witnesses on there.  Indeed, as the prosecution well knows, the photograph of Raymond DeJohn was readily obtainable from other public sites.  Thus, it can hardly be an obstruction of justice to obtain a photograph already in the public domain that has been blessed by a federal judge.

It would appear that such an overly broad proscription of civil liberties would violate not only  a First Amendment right of free speech and right of access to courts, but it also violates the Fourteenth Amendment is due process clause, because the statute is so vague and indefinite that no one can readily discern what is being prohibited.

Surely the statute cannot prohibit the impeachment or discrediting of a witness.  If it did so, it might as well prohibit the practice of criminal defense law practice.

In ***Board of Airport Commissioners v. Jews for Jesus, Inc.,*** 482 U.S. 569 (1987), the issue presented was whether a resolution adopted by the Board of Airport Commissioners banning all "First Amendment activities" at the Los Angeles International Airport (LAX) violated the First Amendment.  An airport peace officer had stopped a minister from distributing free religious literature in the central terminal area, explained the resolution to him and requested him to leave the terminal.  He was warned that the City would take legal action against him if he refused to leave.  A Federal District Court held the resolution unconstitutional, and the Court of Appeals affirmed.   The Supreme Court unanimously held that the resolution was facially unconstitutional under the overbreadth doctrine.  Justice O'Connor, for the Court stated:

> **"Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct my be prohibited is permitted to challenge a statute on its face "because it also threatens other not before the court - those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid."**

Therefore, in this case, upholding Count I of the indictment would be to uphold, at least in its application to the facts of this case, an overly broad proscription of criminal defense law practice.  It becomes a crime to impeach or discredit a government witness.  That cannot be good constitutional law.  A federal judge in court is available, subject to prosecution objections, to prevent defense excesses.  It is not necessary for the federal government to indict people who provide information to defense lawyers to help them do their jobs.

Therefore, Count 1 should be dismissed.

**IN RE: COUNT 2.**

Count 2 of the indictment charges:

COUNT 2

That on or about July 3, 2004, in the Middle District of Alabama, the defendant,

**GEORGE DAVID SALUM III,**

aided, abetted, counseled and induced by others known and unknown to the Grand Jury, did intentionally access the NCIC computer database without authorization and in excess of authorization, and did thereby obtain information from a department and agency of the United States, for the purpose of financial gain and in furtherance of criminal and tortious acts in violation of the U.S. Constitution and laws of the United States and the State of Alabama; all in violation of Title 18, United States Code, Sections lO30(a)(2)(B), 1030(c)(2)(B)(i) and (ii), and 2.

The introduction to count 1 of the indictment recites the following allegations:

2. GEORGE DAVID SALUM III was a Lieutenant employed by the MPD [Montgomery Police Department] in Montgomery, Alabama. As a police officer, SALUM was sworn to support the Constitution of the United States and of the State of Alabama, and the charter and ordinances of the City of Montgomery, Alabama, and to faithfully demean himself in office.

And:

10. The "Alabama Criminal Justice Information System" (ACJIS) was connected to a system that houses nationwide criminal records, the "National Crime Information Center" (NCIC). The ACJIS was based in Montgomery, Alabama, and was maintained for the use of Alabama law enforcement personnel. The NCIC was based in Clarksburg, West Virginia, was maintained by the Federal Bureau of Investigation (FBI), and was used by police agencies nationwide, including the MPD. A name checked through ACJIS was usually automatically run through the NCIC database. Access to both ACJIS and NCIC were controlled by strict rules which required that they be used for law enforcement purposes only. The MPD agreed in writing to adhere to the rules and regulations governing use of NCIC, and to use the system only for legitimate law enforcement purposes.

If the Defendant was a Lieutenant in the Montgomery Police Department, and the Montgomery Police Department was authorized to access these databases, it follows that the Defendant was authorized to do so, because an institution, like a police department, can only act

through its personnel. If the Defendant lacked authorization under the rules, regulations, and policies of the Montgomery Police Department, this is a matter of administrative discipline within that local government agency and not a matter of federal law.

Paragraph 10 of the introduction to the indictment, quoted above, states that: "...A name checked through ACJIS was *usually* automatically run through the NCIC database... ." (Emphasis supplied.) The indictment does not, however, allege that the Defendant obtained information from the NCIC; for all that appears the information he allegedly obtained came exclusively from the ACJIS.

Count 2 alleges that the Defendant accessed these data bases, "...did thereby obtain information from a department and agency of the United States, for the purpose of financial gain and in furtherance of criminal and tortuous acts in violation of the... laws... ." These allegations are, however, conclusory.

There are many ways that information can be used to promote financial gain, but there are also many ways that information, which involve no financial gain. The indictment does not identify the way the obtaining of information led to financial gain. The indictment also does not inform the Defendant who allegedly received the alleged financial gain. If this count relates to the same matters set out in count 1, then the financial gain could be the fee Carmichael's defense attorney received or the fees paid by the defense attorney to his investigator or both. If the intent is to state that the Defendant himself received financial gain, then the indictment ought to state that and how the Defendant allegedly received the same.

The indictment should also give the Defendant notice of the alleged criminal of tortuous acts of which he allegedly acted in furtherance. If this count is intended to charge that the Defendant provided this information to Carmichael's attorney for use in the criminal trial, then

there is a serious question as to whether providing information to a defense attorney, an officer

of the federal court, was improper. Prosecutors regularly use the NCIC and the ACJIS to obtain

background information on witnesses, and if this is proper and lawful, how can it be argued that

providing it to defense counsel for the same purpose is improper.

Count 2 should be dismissed for failure to provide the defendant with enough

information to know what he is charged with and also because it does not set out enough

information to allow the Court to determine if the indictment alleges an offense.

Respectfully submitted this 11th day of July, 2005.

GEORGE DAVID SALUM, Defendant


BY:  Electronically signed by
JULIAN L. MCPHILLIPS, JR.
Attorney for Defendant
Alabama Bar No.  MCP004
P.O. Box 64
Montgomery, AL 36101
334-262-1911

OF COUNSEL:
MCPHILLIPS SHINBAUM LLP
516 S. PERRY STREET
MONTGOMERY, AL 36104

## CERTIFICATE OF SERVICE

I hereby certify I have served a copy of the foregoing by placing a copy of same in the
United States Postal Service, postage prepaid and properly addressed, and by electronic filing
with the Clerk of the Court, to the following address on this the 11th day of July, 2005.

Dixie Morrow
Assistant United States Attorney
Northern District of Florida
21 E. Garden Street, Suite 400
Pensacola, FL 32502

Electronically signed by
JULIAN L. MCPHILLIPS, JR.