IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
(NORTHERN DIVISION)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>PLAINTIFF | } } } | |
| V. | } } } | CASE NUMBER 2:05CR137-F |
| GEORGE DAVID SALUM III,<br>DEFENDANT | } } | |

**DEFENDANT'S OBJECTIONS TO THE RECOMMENDATION OF THE MAGISTRATE JUDGE**

Comes Now Defendant, George David Salum III, by and through counsel, and submits the following set of objections to the Recommendation of the Magistrate Judge.

    A.    **COUNT ONE**

        1.    **failure to allege an offense**

**Objection:** Defendant **objects** to the Magistrate's Recommendation that the Defendants argument that he committed no act which fits within the statutory prohibition on corruptly influencing, obstructing, or impeding justice or intimidating any witness is not a sufficient ground for dismissal of an otherwise proper charging instrument.

Title 18, United States Code Section 1503, refers to efforts to influence or injure judicial officers or jurors. Nothing in count 1 suggests any effort by the Defendant or his alleged associates to influence or injure any judicial officer or juror. Title 18, United States Code Section 1503, provided in relevant part that:

> Whoever... corruptly or by threats or force, or by any threatening letter or letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstructs, or impede, the due administration of justice, shall be punished as provided in subsection (b)...

This provision of Section 1503 is known as the "Omnibus Clause," and serves as a catchall, prohibiting persons from endeavoring to influence, obstruct, or impede the due administration of justice." United States v. Vaghela, 169 F.3d 729 (11th Cir. 1999) (citing United States v. Aguilar, 515 U.S. 593, 598, 115 S. Ct. 2357, 132 L. Ed. 2d 520 (1995)). Not surprisingly, the broad language of Section 1503's Omnibus Clause generated disagreement among the circuits as to the sorts of actions that would trigger this provision and ground a conviction for the substantive offense of obstruction of justice. United States v. Vaghela, 169 F.3d at 732.

The Eleventh Circuit took a broad view of Section 1503's Omnibus Clause, requiring simply that the government establish "that the defendant should have reasonably foreseen that the natural and probable consequence of the success of his scheme would obstruct the due administration of justice." Vaghela supra, (citing United States v. Silverman, 745 F.2d 1386, 1393 (11th Cir. 1984)).

In Aguliar, a United States District Judge was charged and convicted of one count of Title 18, United States Code Section 1503 for lying to F.B.I. agents who were investigating an alleged conspiracy to influence the outcome of a habeas case pending in the district where he served. The Supreme Court, however, found there to be insufficient evidence to support a conviction under Section 1503. See Aguliar, 515 U.S. at 606, 115 S.Ct. 2357.

Although a grand jury had already begun investigation into the conspiracy, the Court found the evidence offered by the government to be insufficient to support a conclusion that Aguilar knew that his false statements would be provided to the grand jury. Id at 601. 115 S.Ct. 2357. Instead, the Court found the evidence to go no further that Aguilar testified falsely to an investigating agent, and that such conduct... falls on the other side of the statutory line from that

2

of one who delivers false documents or testimony to the grand jury itself. See also <u>United States v. Wood</u>, 6 F.3d 692, 696 (10th Cir.1993)( "Particular acts, 'although arguably interfering with some aspect of the administration of justice, may be beyond the scope of section 1503 because the nexus to the progress of a judicial proceeding is too attenuated and the statutory construction therefore too strained.' ").

In analogous to the instant case, intimidating a witness would be unlawful and a violation of Title 18, <u>United States Code</u> Section 1503, if the intimidation, "...influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice... ." Count 1 alleges that the Defendant released information to the attorney's investigator, "... to intimidate DeJohn and other prospective government witnesses... ." The count does not, however, suggest how the release of the information intimidated or could be reasonably expected to intimidate any witness.

There is no suggestion that the information was false. The information consisted of a photograph of the undercover agent and criminal histories of other prosecution witnesses. Surly these witnesses, the federal investigators, and the federal prosecutors all knew what the undercover officer looked like and were familiar with the other witnesses' criminal histories.

The introduction to count 1, includes a paragraph 9, which reads as follows:

> ...9. After the return of the indictment against him, Carmichael and others set up a website, "Carmichaelcase.com," which posted the photographs of and solicited information about informants and agents. When first posted, the website identified DeJohn by name, and noted "Picture Coming." Three photographs of DeJohn were later posted to the website, including DeJohn's official MPD personnel file photograph... .

The indictment, however, does not suggest how a website soliciting information constitutes intimidation.

More to the point, the indictment does not suggest that the Defendant had any knowledge of the website. Indeed, the information allegedly released by the defendant had no

3

impact on the website, except, according to the indictment, one of three photographs. It is almost startling that this indictment was issued, in light of the fact U.S. District Judge Myron Thompson and U.S. Magistrate Deloris Boyd have issued rulings saying it was acceptable for defense attorney Steve Glassroth to maintain a web site with names and photographs of potential witnesses on there. Is this indictment a backdoor way to complain about these judge's rulings, and send a message to the Court that it should never approve of such a website again?

It is evident from the allegations of Count 1 that the actions attributed to the Defendant could not reasonably have been expected to intimidate any witness.

The indictment accuses the Defendant of releasing information to the defense in the Carmichael case. This information may have been useful to Carmichael's defense attorney in cross-examining government witnesses. This is not a violation of Title 18, United States Code Section 1503. The claim that the Defendant's actions intimidated witnesses is a mere conclusory allegation.

Therefore, based upon the facts and law stated above, a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court,... if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct justice under Title 18, United States Code Section 1503. Vaghela, supra (citing Aguilar, 515 U.S. at 599, 115 S. Ct. 2357).

    **2.    Duplicitous**

> **Objection:** Defendant **objects** to the Magistrate's Recommendation that count one does not charge two or more distinct crimes, and it is not due to be dismissed as duplicitous...

A count in an indictment is duplicitous if it charges two or more "separate and distinct" offenses. United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989). The error of duplicity is

present where more than a single crime is charged in one count of an indictment. United States v. Ramos, 666 F.2d 469, 473 (11th Cir. 1982). To avoid duplicity, the Government is required to not charge separate and distinct crimes in a single count. The overall vice of duplicity is that a jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both United States v. Campbell, 279 F.3d 392, 398 (6th Cir. 2002).

According to the indictment, the Defendant provided information to,

> ...[Attorney's investigator] Johnny G. White, Jr., whom the defendant knew to be employed on behalf of federal criminal defendant Carmichael, knowing that white intended to provide the personal file; photograph, and NCIC/ACJIS material to Carmichael to *impeach* or to *discredit* DeJohn and to *intimidate* DeJohn and other prospective government witnesses... . (Emphasis supplied.)

However, does an effort by a criminal defense attorney and those associated with him or her to obtain information to be used in cross-examining prosecution witness, constitute an act which, "...influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice... ." (Emphasis supplied.), within the meaning of Title 18, United States Code Section 1503 ? Such efforts are an essential part of the due administration of justice.

Therefore, providing information to Carmichael's attorney, an officer of the court, which could be used in impeaching and/or discrediting government witnesses, the Defendant conferred no *unlawful* benefit to Carmichael, his attorney, or the attorney's investigator. Such action would therefore, not be corrupt, and would not constitute a violation of Title 18, United States Code Section 1503.

Yet, under Count 1, the Defendant can be convicted of obstruction of justice on proof that he provided information, which could be used in cross-examining a prosecution witness, even if there is not a scintilla of evidence that he undertook to intimidate any witness. In charging both lawful and presumably unlawful conduct in the same count, Count 1 duplicitous

5

and for that reason should be dismissed. United States v. Burton supra; United States v. Davis, 306 F.3d 398, 415 (6th Cir. 2002)(Impermissible duplicity occurs when a single count charges "separate and distinct" crimes).

### 3. vagueness and overbreadth; lack of subject matter jurisdiction

> **Objection:** Defendant **objects** to the Magistrate's Recommendation that the charging language in the indictment is not violative of the Fourteenth Amendment due process clause and that there is no viable challenge is presented.

The statute, Title 18, United States Code, Section 1502 - 1503, as applied to the facts of the indictment is vague and over broad, in violation of the Fourteenth Amendment and First Amendment of the United States Constitution.

Nowhere is Defendant placed on notice that the conduct of which he is accused is proscribed by law. In that respect, the indictment is violative of due process and the fair warning requirement" implicit in the fifth, sixth, and eight amendments to the United States Constitution. As Justice Holmes opined in *McBoyle v. United States*, 283 U.S. 25, 27 (1931), "it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear."

Justice Holmes' words were recalled by the Supreme Court 66 years later in *United States v. Lanier*, 520 U.S. 259 (1997), when Justice Souter, writing for a unanimous Court capsulized the three aspects of the fair warning requirement as follows:

> There are three related manifestations of the fair warning requirement. First, the vagueness doctrine bars enforcement of "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U. S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); accord, *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct.

6

1855, 1858, 75 L.Ed.2d 903 (1983); *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed.888 (1939). Second, as a sort of "junior version of the vagueness doctrine," H.Packer, The Limits of the Criminal Sanction 95 (1968), the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered. See, e.g., *Liparota v. United States*, 471 U.S. 419, 427, 105 S. Ct. 2084, 2089, 85 L.Ed.2d 434 (1985); *United States v Bass*, 404 U.S. 336, 347-348, 92 S.Ct. 515, 522-523, 30 L.Ed.2d 488 (1971); *McBoyle*, supra, at 27, 51 S.Ct., at 341. Third, although clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statue, see, e.g., *Bouie*, supra, at 347-359, 84 S.Ct., at 1704-1706; *Kolender*, supra, at 355-356, 103 S.Ct., at 1856-1858; *Lanzetta*, supra, at 455-457, 59 S.Ct., at 619-621; Jeffries, Legality, Vagueness, and the Construction of Penal Statutes, 71 Va.L.Rev. 189, 207 (1985), due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be withing its scope, see, e.g., *Marks v United States*, 430 U.S. 188, 191-192, 97 S.Ct. 990, 992-993, 51 L.Ed.2d 260 (1977); *Rabe v. Washington*, 405 U.S. 313, 92 S.Ct. 933, 31 L.Ed.2d 258 (1972) (per curiam); *Bouie*, supra, at 353-354, 84 S.Ct., at 1702-1703; ct. U.S. Const., Art. I, § 9, cl.3; id., § 10, cl. 1; *Bouie*, supra, at 353-354, 84 S.Ct., at 1702-1703 (Ex Post Facto Clauses bar legislatures from making substantive criminal offenses retroactive). In each of these guises, the touchstone is whether the statue, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal. We applied this standard in *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), which recognized that the expansive language of due process that provides a basis for judicial review is, when incorporated by reference into § 242, generally ill suited to the far different task of giving fair warning about the scope of criminal liability. The *Screws* plurality identified the affront to the warning requirement posed by employing § 242 to place "the accused ... on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning." Id., at 101, 65 S.Ct., at 1035. At the same time, the same Justices recognized that this constitutional difficulty does not arise when the accused is charged with violating a "right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them." Id., at 104, 65 S.Ct., at 1037. When broad constitutional requirements have been "made specific" by the text or settled interpretations, willful violators "certainly are in no position to say that they had no adequate advance notice that they would ** 1226 be visited with punishment... [T]hey are not punished for violating an unknowable something." Id., at 105, 65

>S.Ct., at 1037. Accordingly, *Screws* limited the statute's coverage to rights fairly warned of, having been "made specific" by the time fo the charged conduct. See also *Kozminski*, supra, at 941, 108 S.Ct., at 2759 (parallel construction of § 241).

*U.S. v. Lanier*, 520 U.S. at 266-67.

Moreover, resolving ambiguity by reference to the rule of lenity would militate against liability in this case as the conduct is not "clearly covered." Finally, as will be addressed below, due process considerations preclude application of what is a clearly novel construction of the statute to conduct that neither the statute nor any case law has fairly disclosed to be within its scope.

Defendant acknowledges that no statute can anticipate each and every instance of specific conduct which might fall within the penumbra of criminal activity, and that a certain breadth of interpretation is inevitable. To accommodate that fact, courts have routinely defined the contours of proscribed activity by reference to the intent of the relevant statutes and prior judicial decisions. That process generally requires an examination of pre-existing law in order to ensure that an accused is on notice that the unlawfulness of his conduct is - or should be - apparent. In this case, however, there is absolutely nothing in the statute or in any federal case law that would satisfy the fair warning requirement. For aught that appears, the government is attempting to punish conduct that it thinks **should** be illegal, even if it isn't.

In the instant case, Count I of the indictment is both vague and overbroad. It charges Defendant, Salum, with corruptly influencing, obstructing and impeding the due administration of justice in <u>United States vs. Leon Carmichael and Freddie Williams</u>, by providing MPD personnel file and photograph of a government witness, David DeJohn, and NCIC/ACJIS database criminal histories and backgrounds of prospective government witnesses to Johnny G. White, Jr, whom the defendant knew to be employed by Defendant, Carmichael, knowing that

8

White intended to provide the personnel file, photograph, and NCIC/ACJIS material to Carmichael and/or his counsel for use in **attempting to impeach or discredit DeJohn and to intimidate DeJohn and other prospective government witnesses**. (Emphasis added)

Of course, Defendant, Salum, denies knowing that Johnny White was employed on behalf of Federal criminal Carmichael, but, for purposes of this challenge to the indictment, let us assume arguendo that Salum did know that Johnny White was so employed. **The purpose of this overbreadth challenge is that even if Salum knowingly provided personnel file material and photograph to Carmichael's Counsel for attempting to impeach or discredit to DeJohn, such should not be "an obstruction of the due administration of justice".**

What the government prosecution is arguing here is that anything interferes with a conviction is somehow an obstruction of the due administration of justice. **That is too narrow a construction of the word "justice". Shouldn't justice also include a search for the truth, with the possibility of an acquittal?** How can "attempting to impeach or discredit DeJohn" be an obstruction of justice when that is simply what good defense lawyers are suppose to do, in properly defending their clients?

Further, it can hardly be said that an improper purpose of this activity of releasing photographs and files would be to intimidate DeJohn as a witness, when in fact U.S. District Judge Myron Thompson and U.S. Magistrate Deloris Boyd have ruled that it was acceptable for defense attorney Steve Glassroth to maintain a web site with names and photographs of potential witnesses on there. Indeed, as the prosecution well knows, the photograph of Raymond DeJohn was readily obtainable from other public sites. Thus, it can hardly be an obstruction of justice to obtain a photograph already in the public domain that has been blessed by a federal judge.

It would appear that such an overly broad proscription of civil liberties would violate not only a First Amendment right of free speech and right of access to courts, but it also violates the

Fourteenth Amendment's due process clause, because the statute is so vague and indefinite that no one can readily discern what is being prohibited.

Surely the statute cannot prohibit the impeachment or discrediting of a witness. If it did so, it might as well prohibit the practice of criminal defense law practice.

Therefore, in this case, upholding Count I of the indictment would be to uphold, at least in its application to the facts of this case, an overly broad proscription of criminal defense law practice. It becomes a crime to impeach or discredit a government witness. That cannot be good constitutional law. A federal judge in court is available, subject to prosecution objections, to prevent defense excesses. It is not necessary for the federal government to indict people who provide information to defense lawyers to help them do their jobs.

Therefore, Count 1 should be dismissed.

> **B.    COUNT 2**
>
> **Objection:** Defendant **objects** to the Magistrate's Recommendation that this count is detailed sufficiently and concisely with the essential facts alleged to constitute the offense and accordingly it is not "vague and indefinite"for the reasons cited.

Count 2 of the indictment charges:

COUNT 2

That on or about July 3, 2004, in the Middle District of Alabama, the defendant,

**GEORGE DAVID SALUM III,**

aided, abetted, counseled and induced by others known and unknown to the Grand Jury, did intentionally access the NCIC computer database without authorization and in excess of authorization, and did thereby obtain information from a department and agency of the United States, for the purpose of financial gain and in furtherance of criminal and tortious acts in violation of the U.S. Constitution

10

and laws of the United States and the State of Alabama; all in violation of Title 18, United States Code, Sections lO30(a)(2)(B), 1030(c)(2)(B)(I) and (ii), and 2.

The introduction to count 1 of the indictment recites the following allegations:

2. GEORGE DAVID SALUM III was a Lieutenant employed by the MPD [Montgomery Police Department] in Montgomery, Alabama. As a police officer, SALUM was sworn to support the Constitution of the United States and of the State of Alabama, and the charter and ordinances of the City of Montgomery, Alabama, and to faithfully demean himself in office.

And:

10. The "Alabama Criminal Justice Information System" (ACJIS) was connected to a system that houses nationwide criminal records, the "National Crime Information Center" (NCIC). The ACJIS was based in Montgomery, Alabama, and was maintained for the use of Alabama law enforcement personnel. The NCIC was based in Clarksburg, West Virginia, was maintained by the Federal Bureau of Investigation (FBI), and was used by police agencies nationwide, including the MPD. A name checked through ACJIS was usually automatically run through the NCIC database. Access to both ACJIS and NCIC were controlled by strict rules which required that they be used for law enforcement purposes only. The MPD agreed in writing to adhere to the rules and regulations governing use of NCIC, and to use the system only for legitimate law enforcement purposes.

If the Defendant was a Lieutenant in the Montgomery Police Department, and the Montgomery Police Department was authorized to access these databases, it follows that the Defendant was authorized to do so, because an institution, like a police department, can only act through its personnel. If the Defendant lacked authorization under the rules, regulations, and policies of the Montgomery Police Department, this is a matter of administrative discipline within that local government agency and not a matter of federal law.

Paragraph 10 of the introduction to the indictment, quoted above, states that: "...A name checked through ACJIS was *usually* automatically run through the NCIC database... ." (Emphasis supplied.) The indictment does not, however, allege that the Defendant obtained information from the NCIC; for all that appears the information he allegedly obtained came

11

exclusively from the ACJIS.

Count 2 alleges that the Defendant accessed these data bases, "...did thereby obtain information from a department and agency of the United States, for the purpose of financial gain and in furtherance of criminal and tortuous acts in violation of the... laws... ." These allegations are, however, conclusory.

There are many ways that information can be used to promote financial gain, but there are also many ways that information, which involve no financial gain. The indictment does not identify the way the obtaining of information led to financial gain. The indictment also does not inform the Defendant who allegedly received the alleged financial gain. If this count relates to the same matters set out in count 1, then the financial gain could be the fee Carmichael's defense attorney received or the fees paid by the defense attorney to his investigator or both. If the intent is to state that the Defendant himself received financial gain, then the indictment ought to state that and how the Defendant allegedly received the same.

The indictment should also give the Defendant notice of the alleged criminal of tortuous acts of which he allegedly acted in furtherance. In order to be completely void for vagueness, a statute must be impermissibly vague in all of its applications. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Challenges to a statute for vagueness which do not involve First Amendment issues, however, generally must be examined in light of the facts of the case at issue. *United States* v. Powell, 423 U.S. 87, 92-93 (1975).

All courts decry vague laws. The Supreme Court has pointed out some of their dangers:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law

> impermissibly delegates basic policy matters to policeman, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

The courts have since uniformly considered those elements- fair warning and arbitrary enforcement- as the two determinants of whether a statute is unconstitutionally vague. See, e.g. *U.S. v. Doremus*, 888 F.2d 630 (9th Cir. 1989), cert. denied, 498 U.S. 1046; *Hejira Corp. v. MacFarlane*, 660 F.2d 1356 (10th Cir. 1981); *Windfaire, Inc. v. Busbee*, 523 F.Supp. 868 (N.D. GA. 1981); *Stansberry v. Holmes*, 613 F.2d 1285 (5th Cir. 1980), reh'g denied, 616 F.2d 568 cert. denied, 449 U.S. 866; *Florida Businessmen for Free Enterprise v. City of Hollywood*, 673 F.2d 1213 (11th Cir. 1982).

Defendant asserts that the statute Title 18 U.S.C. Section 1030(a)(2)(B), 1030(c)(2)(B)(i) and (ii) and 2 under which he has been charged is unconstitutionally vague, because it provides no delineation of proscribed conduct. The indictment in the instant case falls short of the "fair warning" required by *McBoyle* and *Lanier*.

Therefore, if this count is intended to charge that the Defendant provided this information to Carmichael's attorney for use in the criminal trial, then there is a serious question as to whether providing information to a defense attorney, an officer of the federal court, was improper. Prosecutors regularly use the NCIC and the ACJIS to obtain background information on witnesses, and if this is proper and lawful, how can it be argued that providing it to defense counsel for the same purpose is improper.

Count 2 should be dismissed for failure to provide the defendant with enough information to know what he is charged with and also because it does not set out enough information to allow the Court to determine if the indictment alleges an offense.

Respectfully submitted this 15th day of August, 2005.

                                                    GEORGE DAVID SALUM, Defendant

                              BY:   Electronically signed by
                                      JULIAN L. MCPHILLIPS, JR.
                                      Attorney for Defendant
                                      Alabama Bar No. MCP004
                                      P.O. Box 64
                                      Montgomery, AL 36101
                                      334-262-1911

OF COUNSEL:
MCPHILLIPS SHINBAUM LLP
516 S. PERRY STREET
MONTGOMERY, AL 36104

## CERTIFICATE OF SERVICE

    I hereby certify I have served a copy of the foregoing by placing a copy of same in the United States Postal Service, postage prepaid and properly addressed, and by electronic filing with the Clerk of the Court, to the following address on this the 15th day of August, 2005.

    Dixie Morrow
    Assistant United States Attorney
    Northern District of Florida
    21 E. Garden Street, Suite 400
    Pensacola, FL 32502

                                            Electronically signed by
                                            JULIAN L. MCPHILLIPS, JR.