IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                          ) | CASE NO. **2:05-CR-137-F** |
| ) | |
| **GEORGE DAVID SALUM, III**          ) | |

### DEFENDANT'S RESPONSE TO GOVERNMENTS MOTION
### FOR PROTECTIVE "GAG" ORDER

COMES NOW the Defendant, George David Salum, III, by and through his counsel of record, Julian L. McPhillips, Jr., and Allison H. Highley, and hereby responds as follows to the Government's Emergency Motion for Protective "Gag" Order (Doc. 69), as follows:

1.  **It was Chris Holmes, a reporter for a local television station, who called defense counsel's office, not vice versa as the government alleges, to request an interview about the upcoming trial in this matter.** Mr. Holmes had been following the case for many months, and has previously appeared at the federal courthouse for different stages of the case, and had previously interviewed defense counsel McPhillips, **a fact well known the to prosecution, and over which the prosecution made absolutely no objection, either to the defense lawyers or this Court**. Indeed, Ms. Morrow admits this much on page 8 of her motion for the "gag" order.

2.  The undersigned attorneys did meet with Mr. Holmes during the morning hours of Wednesday, November 2, 2005. However, from the thrust of Mr. Holmes' questions, it appeared obvious he had already spoken to the federal prosecutors, as he had substantial inside information concerning the government's contentions in this case against Defendant Salum. Thus, the undersigned felt compelled to respond to a few of

1

Mr. Holmes' questions, for his client's protection. **However the undersigned declined to answer many of Mr. Holmes' questions about the evidence**, stating the reason to Mr. Holmes that **"We don't want to disclose our strategy to the prosecution."**

3. The conversation which the defense lawyers had with Mr. Holmes was primarily limited to information already in newspaper articles (see attached **Exhibit A**), and/or documents on file with the Court. Counsel was mindful of the bounds of propriety throughout the interview, and declined to answer many questions about the upcoming trial and his theories of the case. Further, **this was a singular interview, not a press conference, as the prosecution alleges.**

4. **At the time of the interview, absolutely no "gag" order was in effect, nor had such an order ever been mentioned or contemplated throughout the entire earlier stages of the case, especially because prior interviews with both the broadcast and print media had not been objected to by the federal prosecutor. Counsel for the Defendant had no reason to believe such an order would be requested.** Indeed, the government has long been fully aware that Mr. McPhillips has been quoted on this matter many times, both on television, and in numerous newspaper articles. (See attached **Exhibit A**). Again, the government admits this on the last page of its motion.

5. **Assistant United States Attorney Dixie Morrow made no effort to contact anyone at McPhillips Shinbaum to notify them of her concerns before filing a motion for protective order**, despite the usual protocol in favor of such. **The undersigned will, of course, comply with every Order of this Court, but cannot undo what has already been done.**

2

6.   Furthermore, there is no need for a "gag" order in this matter. This case has been widely publicized from its inception. If the jury venire were going to be affected by publicity, then the "cat has long ago been let out of the bag," so to speak. **Further, the publicity has been far more adverse to the Defendant than positive. In any event, these are issues which can and should be resolved by careful voir dire and limiting instructions.**

7.   Federal prosecutor Morrow admits in Paragraph 5 of her Motion that **"the United States... [has issued] a standard press release summarizing, without comment, the 'public record' content of the indictment** when returned by the Federal Grand Jury..." Of course **the indictment is lengthy, and reads like a book, with many adverse factual averments by the prosecution against Defendant Salum** and his alleged wrongdoing. Perhaps that is one reason why television reporter Holmes knew so much about the government's case. **It is blatant hypocrisy for the government to complain about the defense's contact with the media, when the government itself is putting out far more information about its case to the media than defense counsel has stated.**

8.   Indeed, the undersigned viewed the subject matter of the case and the Attorney McPhillips interview on WSFA's evening news for Wednesday, November 2, 2005. **Again, what blatant hypocrisy. What "the federal prosecutors"** (the term used by WSFA, but obviously referring to Dixie Morrow) **were quoted as saying was far more prejudicial to the defense than anything Attorney McPhillips said was prejudicial to the prosecution**. Mr. McPhillips simply raised a question about why other people above and below his client, in the chain of custody of material released to

3

Attorney Glassroth's website, were not indicted. On the other hand, **Attorney Morrow was quoted as charging Defendant Salum with further wrongdoing by tampering with a witness, by trying to influence his testimony.**

9. In the recent federal criminal trial, United States v. Scrushy, 366 F. Supp. 2d 1134 (D. Ala. 2005), the United States District Court in Birmingham allowed lawyers for both the defense and prosecution to make daily public statements to the broadcast and print media, outside the courthouse, following the day's proceedings, even though the jury in that case was unsequestered the entire five-month length of that trial, and could easily go home unsupervised at night and listen to television or radio broadcasts, or read the Birmingham News, in the privacy of their own homes. Of course, the court instructions were to the contrary, but there was no way to enforce or regulate any such a restriction. That prominent case, therefore, set some precedent for the federal district courts of Alabama.

10. There are serious First Amendment free speech protections at issue here. These freedoms can be challenged, if not violated, whenever a court imposes a gag order on out-of-court statements about a subject matter of public concern. Surely, a federal criminal felony charge of obstruction of justice rises to the level of public concern, under standards of Connick v. Myers, 461 U.S. 138 (1983), and its progeny.

11. It is amazing that the federal prosecutor cites as her authority the dissenting opinion of four justices in In re Sawyer, 360 U.S. 622 (1959). Since when did dissenting opinions become proper legal authority for any court to follow? Further Ms. Morrow amazingly cites the News-Journal Corp. v. Foxman, 939 F.2d. 1499 (1999), for the proposition that "The Supreme Court views prior restraints directed to the press with

4

a heavy presumption against their constitutionality." **Thus Ms. Morrow helps make the case against a gag order in this case, by the legal authorities she cites.**

WHEREFORE, the Defendant respectfully requests that this Court DENY the government's motion for a protective order.

RESPECTFULLY SUBMITTED this 3rd day of November 2005.

> GEORGE DAVID SALUM, III
> Defendant
>
> /s/ Julian L. McPhillips, Jr.
> JULIAN L. McPHILLIPS, JR.
> Alabama Bar No. MCP004
>
> /s/ Allison H. Highley
> ALLISON H. HIGHLEY
> Washington Bar No. 34145
>
> Attorneys for the Defendant
> McPhillips Shinbaum, LLP
> Post Office Box 64
> Montgomery, Alabama 36104
> (334) 262-1911

## CERTIFICATE OF SERVICE

I hereby certify that on this date, November 3, 2005, a copy of the foregoing was served upon the Government by electronic filing with the Clerk of this Court, and by mailing an additional courtesy copy to the following address:

> Dixie A. Morrow
> Assistant United States Attorney
> Northern District of Florida
> 21 E. Garden Street, Suite 400
> Pensacola, Florida 32502

> /s/ Julian L. McPhillips, Jr.
> JULIAN L. McPHILLIPS, JR.
> Attorney for the Defendant

5

# EXHIBIT A

# Montgomery Advertiser

montgomeryadvertiser.com

**FRIDAY**
*May 27, 2005*
*Montgomery Edition*
*50 cents*

## Ex-police lieutenant indicted

**George David Salum III is charged with obstructing justice in federal drug case**

By Crystal Bonvillian
Montgomery Advertiser
cbonvillian@gannett.com

A former Montgomery police officer has been indicted for allegedly releasing information and a photo of an undercover DEA agent to a defendant in a drug case. The photo was posted on a Web site associated with Montgomery businessman Leon Carmichael, who has been charged with money laundering and drug trafficking.

George David Salum III, 43, is charged with obstructing justice in the federal drug case against Carmi-

chael and his co-defendant, Freddie Williams. Salum also is charged with unauthorized access of the National Crime Information Center and the Alabama Criminal Justice Information System.

Salum, who faces up to 15 years in prison if convicted, declined comment when reached at his home Thursday afternoon.

He was a 20-year veteran of the Montgomery Police Department. He resigned in September after being placed on administrative leave pending the outcome of an investigation. At that time, he admitted releasing the photo but claimed he

*Indicted Page 2A*

## Indicted: Ex-officer's charges surprise attorney

From Page 1A

did not know how it would be used. His attorney, Julian McPhillips, said he was not expecting the charges against his client.

"I thought his role in the matter was so innocent," McPhillips said. "The officer's photograph was already in the public domain. It's like giving someone a glass of water when they get a glass of water from someone else. What have you done wrong?"

The investigation into Salum's actions, which began at the Police Department in August, was turned over in November to the U.S. attorney's office for the Northern District of Florida. Retta Goss, a spokeswoman for 'Leura Garrett Canary, U.S. attorney for Alabama's middle district, did not give a reason for the local office's recusal in the case.

Canary's office has in the past asked the courts to force Carmichael to shut down a Web site, www.carmichaelcase.com, that asks for information on witnesses in his case. Carmichael and Williams were arrested in November 2003.

The undercover DEA agent pictured on the Web site is Raymond David DeJohn, also a former Montgomery police officer. He had worked on the DEA task force in the Carmichael case and

at the time his photo was released was a Prattville police officer.

Assistant U.S. Attorney Len Register of the Florida office, said Salum was a lieutenant for the Montgomery Police Department last year when, aided by "others known and unknown" to prosecutors, he allegedly provided the personnel file and a photograph of DeJohn to Johnny G. White Jr., a private investigator working for Carmichael and his attorneys.

Salum also is accused of accessing the Police Department's National Crime Information Center and the Alabama Criminal Justice Information System databases without authorization and gathering information, such as criminal histories, on other government witnesses in Carmichael's case.

By allegedly accessing that information "for personal gain," Salum violated both federal and Alabama law, the news release states.

McPhillips denies those allegations.

"I don't think he received any financial reward for it," McPhillips said.

"The indictment alleges that Salum knew that White intended to provide the material to Carmichael and/or his counsel for use in attempting to impeach or discredit DeJohn and to intimidate DeJohn and other prospective