IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:05-cr-137-F |
| | ) | |
| GEORGE DAVID SALUM, III | ) | (WO - not recommended for publication) |

# **MEMORANDUM OPINION AND ORDER**

This cause is before the Court on the Government's Emergency Motion for Protective "Gag" Order (Doc. # 69) which was filed on November 2, 2005. By this motion, the Government seeks a protective order prohibiting the parties and their counsel from commenting to the news media about this case until after the jury has reached a verdict.[1] The issues have been briefed by both sides and the Court held a telephone conference with counsel on November 3, 2005 to address the issue. For the reasons stated below, the Court finds that a substantial likelihood exists that continued extrajudicial comments of the type previously made by counsel for both parties could prejudice a fair trial in this case. Based on this concern, the Court will enter a narrowly-tailored order restricting extrajudicial statements by the parties and all counsel in this case. Accordingly, the Government's

---

[1] The Court notes at the outset that the Government has not sought a restraining order directed to the media. Moreover, the restraining order sought would be applicable to both the Government and the Defendant.

Emergency Motion for Protective "Gag" Order (Doc. # 69) is GRANTED.[2]

## BACKGROUND

In May of 2005, the Grand Jury handed down a two count indictment against the Defendant. Because of its connection to a high-profile prosecution of a local businessman for drug-dealing and the nature of the allegations, this case has been the subject of media interest.

After the Defendant's initial appearance, the Government issued a single press release setting forth the allegations in the indictment. Other than this press release and a newspaper interview about the indictment in May of 2005, the Government has assiduously avoided discussing this case with the media and the media has taken all its information about the Government's case against the Defendant from Court filings which are public records.

On the other hand, the attorney representing the Defendant has made more than one statement to the press.[3] On November 2, 2005, one of the attorney's representing the Defendant appeared in an interview broadcast on WSFA Channel 12's six o'clock broadcast. A written transcript of the news report featuring the interview and the video of the news

---

[2] The Court's previously entered an Order temporarily granting the motion until the parties could be heard on the motion. This Memorandum Opinion and Order supplants that prior Order.

[3] As early as May 27, 2005, a news story concerning the indictment in this case included material from an interview with counsel for Defendant replete with quotations attributed to Defendant's counsel. *See* Ex. to Doc. # 71. Counsel for Defendant frequently gives interviews to the media and holds press conferences relating to cases in which he is involved.

report are both available to the general public on the WSFA Channel 12 website. In the November 2, 2005 interview, Defendant's counsel stated that the Government has indicted the wrong person for the wrong crime and that his client was close to computer illiterate and asked why other people hadn't been charged along with Defendant. In addition to the interview footage of Defendant's counsel, the news report also included information on a filing the Government made on November 1, 2005 disclosing evidence on which it intended to rely which arguably would fall within the province of Federal Rule of Evidence 404(b). This Court has not as of this date ruled on the admissibility of the information in the Government filing, and it can only characterized as evidence that is favorable to the Government and not at all favorable to Defendant.

Jury selection in this matter is scheduled for November 7, 2005. Summons to jurors have already been sent out. The trial of this case is scheduled to begin after jury selection.

## DISCUSSION

In its motion, the Government argues that counsel for Defendant has exposed the venire panel to information which may not be admitted by this Court in the trial of this case and that Defendant's counsel has no legitimate purpose for appearing on television or in the newspapers to describe the Defendant's position at this point in the case. The Government further argues that unless this Court issues a protective order, irreparable harm may be done to this Court's effort to seat a jury whose verdict must be based solely upon the evidence properly admitted at trial. The Government argues that because there is a reasonable

3

likelihood that prejudicial publicity will prevent a fair trial, this Court should issue the requested protective order. The Government's motion relies on *dicta* contained in two decisions of the United States Supreme Court and a case from the Eleventh Circuit Court of Appeals. *See, e.g., Gentile v. State Bar of Nevada,* 501 U.S. 1030 (1991); *Sheppard v. Maxwell,* 384 U.S. 333 (1966); *The News-Journal Corp. v. Foxman,* 939 F.2d 1499 (11th Cir. 1999).

While Defendant's counsel has formally opposed the Government's motion, it is interesting to note that he does so after outlining what he contends is media coverage of this case prejudicial to his client which arises out of statements he believes the Government has made. Clearly, Defendant has acknowledged that the media coverage of this case presents the potential of depriving his client of his Sixth Amendment right to a fair trail by an impartial jury, free from outside influences. Defendant also contends that he has a First Amendment right to speak about his case because it involves a matter of public concern. Additionally, Defendant cites the case of *United States v. Scrushy,* 366 F. Supp. 2d 1134 (N.D. Ala. 2005), as having set some precedent for whether a Court should issue protective orders in high-profile criminal cases.[4]

Given the perhaps understandable media interest in this case, the Court must and will

---

[4] Interestingly, the opinion Defendant cites has nothing to do with that issue, and the district judge in the *Scrushy* case entered a protective order. *See United States v. Scrushy,* CR-03-BE-0530-S, 2004 WL 848221 at *1 (N.D. Ala. Apr. 13, 2004). In the Court's view, the applicable ruling in *Scrushy* supports the Government's position, not Defendant's.

do everything it can legally do to ensure that Defendant's constitutional right to a fair trial is protected.[5]  Moreover, the Court recognizes that the Defendant is not the only entity entitled to a fair trial.  The public and the Government have an interest in seeing that justice is administered fairly.  *See, e.g., United States v. Brown,* 218 F.3d 415, 424 (5th Cir. 2000).  "Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial jurors, and an outcome affected by extrajudicial statements would violate that right."  *Gentile,* 501 U.S. at 1075.

Despite this Court's obligation to protect the fairness of the trial process in this case, the Court must also consider Defendant's contention that the requested protective order violates his rights under the First Amendment.  It is not entirely clear what standard to apply to the determination of whether to impose a protective order precluding or limiting extrajudicial comments by the parties or their counsel in order to protect the fairness and impartiality of the criminal process.  Neither the United States Supreme Court,[6] not the

---

[5] The Court is mindful that the Alabama Rules of Professional Conduct impose on the attorneys ethical obligations to refrain from making prejudicial or improper comments about this case.  *See* Ala. R. Professional Conduct 3.6 & 3.8.  Whether any attorney in this case has violated ethics rules does not fall within the purview of this Court.  Instead, that is the province of the Alabama Bar Association and its various review and disciplinary boards.  This Court's concern must be that of ensuring the fair trial right is protected and not the enforcement of the Alabama Rules of Professional Conduct.

[6] Two Supreme Court decisions do provide some guidance.  In *Sheppard*, the Court criticized the extensive publicity surrounding the murder of the wife of Dr. Sam Sheppard and his trial.  In cataloging the many abuses by the attorneys and the media, the Court noted that the trial judge could have taken action to "proscribe[] extrajudicial statements by any lawyer, party, witness, or court official[.]"  384 U.S. at 361.  The Court further commented that "[h]ad the judge, the other officers of the court and the police placed the interest of

Eleventh Circuit Court of Appeals have addressed this precise issue in a holding. *See, e.g., United States v. Carmichael*, 326 F. Supp. 2d 1267, 1293 (M.D. Ala. 2004) (Thompson, J.); *Scrushy,* 2004 WL 848221 at *2. Other Circuit Courts of Appeals have addressed the issue, but have not been unanimous about the standard to be applied. *See, e.g, The News-Journal Corp. v. Foxman,* 939 F.2d at 1515 n.18 (acknowledging the split in authority among the circuits, but refusing to determine the appropriate standard and instead applying the *Younger* abstention doctrine to the case). Thus, there is no binding precedent which this Court must follow.[7] The Fifth Circuit Court of Appeals addressed issues very similar to the ones in this

---

justice first, the news media would soon have learned to be content with the task of reporting the case as it unfolded in the courtroom–not pieced together from extrajudicial statements." *Id.* at 362. The Court emphasized the threat of pervasive pretrial publicity to the constitutional right to a fair trial and stressed the role of the trial court in protecting the process. *Id.* at 362-63. In *Gentile,* the Supreme Court discussed the limitations imposed by the state bar ethics rules on the speech of a lawyer involved in litigation. The Court quoted *Sheppard* and acknowledged that it "contemplated that speech of those participating before the courts could be limited." 501 U.S. at 1072. The Court held that "the 'substantial likelihood of material prejudice' standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials." 501 U.S. at 1075. Neither of these cases directly addressed the issue of a court-imposed restrain on counsel's comments.

[7] The undersigned is aware that another judge in this district has addressed the issue of a protective order in a published decision. *See, e.g., Carmichael,* 326 F. Supp. 2d 1267. Of course, this decision is not binding precedent. Defendant has not argued that the *Carmichael* case supports his opposition to the protective order sought by the Government. The Court finds several significant material differences between this case and the *Carmichael* case exist. The protective order in the *Carmichael* case was not sought on the eve of jury selection to protect the fairness of the process, but instead was sought months before the case was actually to be tried. The protective order sought in the *Carmichael* case would only have prohibited the statements by the defendant and would not have imposed a similar restriction on the Government. The defendant in the *Carmichael* case advanced a theory that his extrajudicial speech was necessary for him to find witnesses and information

case in *Brown,* 218 F.3d at 423-428.  In that case, the Fifth Circuit Court of Appeals held "a district court may in any event impose an appropriate gag order on parties and/or their lawyers if it determines that extrajudicial commentary by those individuals would present a 'substantial likelihood' of prejudicing the court's ability to conduct a fair trial." 218 F.3d at 427.  The Court find the discussion in *Brown* well-reasoned and persuasive and will apply the standard set forth in that decision.[8]

The Court is satisfied that in this case extrajudicial commentary by the parties or their lawyers would present a substantial likelihood of prejudicing this Court's ability to conduct a fair trial. This is especially true given the media interest in this case and the close proximity of jury selection from jurors in a venire which has already been established by the mailing of jury summonses.  While the Court anticipates a rigorous voir dire and emphatic jury instructions, the prophylactic measure of a restraint on extrajudicial comments by the trial participants plays an essential role in ensuring a fair trial in this case.  Accordingly, it is hereby ORDERED as follows:

(1) From now until the final verdict is rendered in this case, ALL attorneys and parties are to refrain from making or authorizing extrajudicial comments and disseminating or authorizing the dissemination of information to the media and the public concerning:

---

necessary to help him build a defense.  Thus, that case, unlike this one, also included an argument that the extrajudicial speech was not only protected under the First Amendment, but was also protected under the Fifth and Sixth Amendments.

[8] The Court notes that at least one other district court in this state has applied the *Brown* approach to a similar case.  *See Scrushy,* 2004 WL 848221 at *3-*4.

(a) materials provided in discovery for the preparation of the trial of the case;

(b) the character, credibility, reputation or criminal record of any party or witness;

(c) the expected testimony of any party or witness;

(d) the content of exhibits expected to be offered into evidence;

(e) the motivation of the Government in bringing this prosecution;

(f) matters that counsel know, or reasonably should know, will be inadmissible at trial, and would if disclosed create a substantial risk of prejudicing an impartial trial; or

(g) with the exception of Mr. Salum *personally*, any opinion as to the guilt or innocence of the defendant.

(2) that counsel for the parties avoid commenting in court papers that are not filed under seal on evidence that is irrelevant to legal matters at issue herein.

(3) that counsel for the parties are charged with providing the parties with copies of this order and explaining to them the full intent of this order.

Nothing set forth above shall prohibit any of the above parties from stating the following without elaboration or any kind of characterization whatsoever:

(1) the general nature of an allegation or defense made in this case;

(2) information properly contained in the public record of this case;

(3) scheduling information; or

(4) any decision made or order issued by the court that is a matter of public record.

The parties and their counsel are cautioned that any failure to strictly comply with the terms and spirit of this order can result in sanctions against the offending individual, including contempt of court, and may result in a more strenuous restrictive "no comment" order being imposed.

DONE this the 4th day of November, 2005.

/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE