IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA,
PLAINTIFF

vs.                                                    CASE NO:   2:05 CR 137-F

GEORGE DAVID SALUM, III,
DEFENDANT.
_____/

**MOTION FOR DOWNWARD DEPARTURE,
MOTION FOR VARIANCE FROM THE GUIDELINES,
AND SENTENCING MEMORANDUM**

    The Defendant, George D. Salum, III, by and through his undersigned attorney, submits this memorandum in aid of sentencing, moves the Court to impose a reasonable sentence, moves the Court for a downward departure from the sentencing guidelines and moves the Court for a variance from the sentencing guidelines and as grounds for these requests the Defendant would show the Court the following:

    George D. Salum, the Defendant, is forty-five years old. His parents divorced when he was three years old. Mr. Salum was raised by his father until he was ten years old. His father was sent to Vietnam where his father served in the military. The Defendant was then raised by his maternal aunt and uncle until he was eighteen years old.

    In 1984, the Defendant became a police officer with the Montgomery Police Department. Mr. Salum was a police officer with the Montgomery Police Department for twenty years. Mr. Salum rose to the rank of lieutenant. Because of this criminal offense, Mr. Salum was forced to leave the Montgomery Police Department. Mr. Salum is now employed doing odd jobs such as retail clerk at retail stores.

    Mr. Salum has no prior criminal history and has always been employed. Mr. Salum is not a risk to anyone. Mr. Salum's criminal conduct was a single episode and it was aberrant behavior. Mr. Salum suffers from a severe mental condition, he was an adder and abider, he had a minimal role in this offense, he is subject to possible abuse in the prison system, his loss of his job and his loss of standing in the community are all mitigating factors, which this Court must

take into consideration when sentencing Mr. Salum. Given these circumstances, a sentence below what is called for in the guidelines would be "sufficient but not greater than necessary", to comply with the goals of sentencing as set forth in 18 U.S.C. Section 3553 (a)(2).

### Sentencing after Booker

The Supreme Court's decision of *United States v. Booker*, 125 S.Ct. 738 (2005), ruled that the federal Sentencing Guidelines ceased to be mandatory, becoming only one of several factors to be considered under 18 U.S.C. 3553 § (a). Although only advisory, the guideline range must nevertheless be correctly calculated when considered under § 3553 (a). *See United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).

> After *Booker*, sentencing requires two steps. First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines. See *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the district court must consider several factors to determine a reasonable sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. See 18 U.S.C. 18 §3553 (a).

*Id*. (setting out § 3553 (a) factors). Post-*Booker*, sentences are subject to appellate review for reasonableness. Moreover, a guideline sentence is per se reasonable only if the district court has in addition to calculating the guidelines also taken into account the other § 3553 (a) factors. *Talley*.

Because the guidelines are not binding, "courts need not justify a sentence outside of them by citing factors that take the case outside the "heartland". *United States v. Ranum* 353 F.Supp.2d 984, 987 (E.D. Wis., 2005)

The district court may now consider even those mitigating factors that the advisory guidelines prohibit: e.g., poverty, racial discrimination and humiliation, drug abuse and addiction dysfunctional family background, lake of guidance as a youth, etc. See *United States v. Ranum*, 353 F.Supp.2d 984 (E.D. Wisc. 2005) ("The guidelines' prohibition of considering these factors cannot be squared with the Section 3553 (a)(1) requirement that the court evaluate the "history

and characteristics' of the defendant"); *United States v. Myers*, 353 F.Supp.2d 1026 ((S.D. Iowa, 2005) ("The guidelines prohibition of considering these factors cannot be squared with the § 3553(a)(l) requirement that the court evaluate the "history and characteristics" of the defendant....Thus, in cases in which a defendant's history and character are positive, consideration of all of the § 3553(a) factors might call for a sentence outside the guideline range,'); *United States v. Jaber*,362 F.Supp.2d 365 (D. Mass. 2005) ("Booker plainly allows courts to look carefully at those factors and to determine to what degree they are relevant to individual cases")' see also 18 U.S.C. § 3661( "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," cited in Booker 125 S.Ct. at 758); *United States v. Hadash*,408 F.3d 1080, 1083 (8th Cir 2005) ("because the guidelines are now advisory, a reasonable departure is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure."); *United States v. Pacheco-Soto* 386 F.Supp.2d 1198,1204 (D.N.M. 2005) ("Because the Guidelines are no longer mandatory, a non-Guideline sentence need not be supported by factors that would have justified a departure under the old, mandatory regime, and a traditional "departure" is no longer necessary in order for the sentencing court to impose a sentence below the Guidelines range"); id ("Under the Guidelines, courts traditionally were forbidden to consider the defendant's age...his education and vocational skills...his mental and emotional condition...his physical condition including drug or alcohol dependence...and his family ties and responsibilities... in the wake of *Booker*... these factors are important to consider in fashioning a just sentence.").

    Consider also that Congress had directed that the district court "shall impose a sentence **sufficient,** *but not greater than necessary*, to comply with [the purposes of sentencing]" (emphasis added). l8 U.S.C. $ 3553(a) (emphasis added). This is the "primary directive" of the sentencing statute. Ranum, 353 F.Supp .2d at 986; *U.S. v. Pirani*, 406 F.3d 543,56418th Cir. 2005)(Bye, J., dissenting) ("factors previously deemed ordinarily irrelevant to sentencing under Chapter 5H of the guidelines such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, employment record, family ties and responsibilities, and charitable service are now valid considerations for a court in imposing a sentence").

There are many factors that the Court should consider with respect to the history and characteristics of the Defendant.

1. Mr. Salum is forty-five years old and he has no prior criminal history as a juvenile or adult.
2. Mr. Salum is a high school graduate with some college education. Mr. Salum has dependents he is legally obligated to support. Although he is now divorced from his wife Sonya R. Salum, he is obligated to provide child support to children who were born of the marriage.
3. Mr. Salum's children have experienced numerous medical difficulties with regard to the daughter Shayna due to her diagnosis of turrets syndrome and a personality disorder. Mr. Salum suffers from extreme anxiety and panic disorder. The psychiatrist, William C. Freeman, M.D., wrote a treatment letter which is attached to this motion and made a part hereof. Dr. Freeman states that Mr. Salum has been treated since 1991 for panic disorder with agoraphobia and major depression, which is recurrent. Mr. Salum also suffers from claustrophobia and generalized anxiety disorder. Dr. Freeman opines in his letter that incarceration would be a significant detriment to Mr. Salum's mental status. Mr. Salum would likely experience a panic attack. Dr. Freeman opines that an exacerbation of these conditions increase the chances of Mr. Salum wanting to commit suicide.
4. Mr. Salum has lived in Montgomery, Alabama for twenty-five years where he raised a family and worked as a police officer.

Mr. Salum was found guilty by a jury of obstruction of justice and unauthorized utilization of the NCIC/ACJIS crime computer utilized at the Montgomery Police Department. There are several unresolved objections to the Pre-Sentence Report. The Pre-Sentence Report states that the total offense level for this offense regarding the obstruction of justice count is level offense level thirty. The maximum term of imprisonment authorized by law is ten years. The Defendant will contend at the sentencing hearing that the base level offense is twenty-six with a total offense level of twenty-two after the adjustments.

### Obstruction of Justice –U.S.G. Section 3 C1.1

Mr. Salum objects to Paragraph 21 of the Pre-Sentence Report where there is a two level upward adjustment for obstruction of justice. The Government is moving the Court to apply this two level upward adjustment because the Defendant testified during trial and the Government claims he committed "perjury" when he stated that he had not been trained or tested on the proper procedure for usage of NCIC / ACJIS. This enhancement under the obstruction guideline requires that a Defendant "willfully obstruct the prosecution or impede the administration of justice". Mr. Salum objects to any obstruction of justice enhancement both as a matter of law and under the facts of this case.

Mr. Salum did not commit perjury at trial. The Defendant's testimony at trial was truthful. The Court must determine if the Defendant testified truthfully.

"Perjury, for purposes of applying this enhancement, has been defined by the United States Supreme Court as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confession, mistake or faulty memory.'" *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.ed.2d 445 (1993)).

A district court is required to make specific findings of facts when enhancing a sentenced based on obstruction of justice. *United States v. Alpert*, 28 F.3d 1104 (11th Cir. 1994). If the objection is based on allegedly false testimony in trial given by the Defendant, the district court should make a specific finding as to each alleged instance of obstruction by identifying the materially false statements individually. *United States v. Singh*, 291 F.3d 756 (11th Cir. 2002).

## Defendant's Role in the Offense
## U.S.S.G. § 3B1.1 3B1.2

Based on the Defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decreased by **4** levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by **2** levels.

In cases falling between (a) and (b), decrease by **3** levels.

The Defendant is moving the Court to grant him a four level downward adjustment under USSG Section 3B 1.2 based on his minimal role in the scheme to obstruct justice. This subsection A, minimal participant, applies to a Defendant who plays a minimal role in concerted activity. This downward adjustment is intended to cover any Defendant who is among the least culpable of those involved in the conduct of a group. Under this provision, the Defendant's lack of knowledge or understanding of the entire scope and structure of the enterprise and of the activities of others is indicative of a role as a minimum participant.

The other culpable people in the scheme to obstruct justice, Johnny White, attorney Steven Glassroth and Leon Carmichael are more culpable than this Defendant because they all had very specific knowledge of the scheme, attorney Glassroth planned the scheme and Leon Carmichael was the principle organizer of the scheme.

In deciding the Defendant's role in the offense, the Court must first consider the Defendant's role in the relevant conduct for which he has been held accountable at sentencing. The Court must next consider his role as compared to that of other participants in his relevant conduct.

The Defendant's role in this offense is clearly minimal. Leon Carmichael, a Defendant in another criminal case was charged with conspiracy to possess with the intent to distribute more than three thousand kilos of marijuana. Mr. Carmichael and Mr. Salum do not know each other and they have never met. Mr. Carmichael employed attorney Steve Glassroth and attorney Lisa Wayne to defend him in the federal marijuana case. Mr. Glassroth the attorney, employed Ricky Moore and Johnny White as private investigators. Mr. Moore is a former member of the Montgomery Police Department. Mr. Carmichael and his attorneys setup a website related to his federal criminal case. Mr. Salum's lack of knowledge and his lack of understanding of the scope and structure of this criminal enterprise and his lack of knowledge of the activities of others are all indicative of his role as a minimal participant.

**Downward Departure Based on Aberrant Behavior Pursuant to U.S.S.G. § 5k2.20**

The Court can depart downward from the guidelines pursuant to U.S.S.G. § 5K2.20 and U.S.S.G. Chapter One, part A (4)(d) if it finds that there is "aberrant behavior". As set forth in the Pre-Sentence Report, Mr. Salum has no criminal history, this offense did not involve serious bodily injury or death, this offense did not involve a firearm and this offense was not a serious drug trafficking offense. A sentence below the applicable guideline range is justified in this case because Mr. Salum's criminal conduct constituted aberrant behavior.

Mr. Salum has been on conditions of release in this case since the date of his arrest. After Mr. Salum was convicted, he was again released on conditions. Mr. Salum has honored all of his conditions of release and there have been no violations of those conditions.

Based upon Mr. Salum's absolute lack of any prior criminal history, the facts and circumstances surrounding Mr. Salum's criminal conduct, and the very limited duration of that conduct, Mr. Salum respectfully submits that his conduct constitutes aberrant behavior justifying a downward departure in his sentence.

Congress established the Federal Sentencing Guidelines in part to eliminate "unwarranted sentencing disparities among [similarly situated] defendants". 28 U.S.C. § 991(b)(1)(B). It authorized the district courts to use discretion when confronted with a case containing

extraordinary facts and circumstances that distinguish it from the "heartland" of cases that guidelines describe. U.S.S.G. §1B1.1.

> The legislative history [of the Federal Sentencing Guidelines] reflect that it was not Congress' aim to straightjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines glass bubble, and preventing it from exercising discretion, flexibility or independent judgment.

*United States v. Lara*, 905 F.2d 599, 604 (2d Cir.1990).

A district court is encouraged to depart where there are "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553 (b); U.S.S.G. § 5K2.0 (Policy Statement). The Sentencing Guidelines Commission, notwithstanding specific exceptions, "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines that could constitute grounds form departure in an unusual case." U.S.S.G. Court hearing. 1, pt A, Intro. Comment. 4(b). In fact, U.S.S.G. § 5K2.0 encourages departures, because circumstances that may warrant a departure cannot, by their very nature, be comprehensively listed and analyzed in advance. As such, a district court is encouraged to give careful consideration to the "nature and circumstances of the offense and the history and characteristics of the Defendant." 18 U.S.C. § 3553 (a)(1).

Additionally, the United States Supreme Court in *Koon v. United States*, 518 U.S. 81 (1996) reaffirmed the judicial discretion, flexibility and independence to grant departures. Specifically, the Supreme Court in *Koon* explained that there exists room in the Guidelines offenses (1) committed without significant planning; (2) of limited duration; and (3) that represented a marked deviation by the defendant from an otherwise law-aiding life."

Amendment 603, effective November 1, 2000, created U.S.S.G. § 5K2.2, entitled "Aberrant Behavior" which provides:

> A sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior. However the court may not depart below the guideline range on this basis if (1) the offense involved serious bodily injury or death; (2) the defendant discharged a firearm or otherwise used a firearm or a dangerous weapon; (3) the instant offense of conviction is a serious drug trafficking offense; (4) the defendant has more than one criminal history point, as determined under Chapter Four (Criminal History and Criminal Likelihood); or (5) the defendant has a

prior federal, or state, or felony conviction, regardless of whether the conviction is countable under Chapter Four.

U.S.S.G. § 5K2.20

Pursuant to Application Note 1 to U.S.S.G. § 5K2.20, "aberrant behavior" is defined to mean "a single criminal occurrence or single criminal transaction that (A) was committed with out significant planning; (B) was of limited duration; and (c) represented a marked deviation by the defendant from an otherwise law-abiding life." In this case, Mr. Salum submits that his conduct in this offense was a single criminal transaction or occurrence, which was committed without significant planning, was of limited duration and represented a marked deviation from Mr. Salum's otherwise law-abiding life.

### *18 U.S.C. § 3553(a)*

Beyond what may be permissible under the Guidelines, "the history and characteristics of the defendant," 18 U.S.C. § 3553(a), and the other factors set forth in 18 U.S.C. § 3553(a)(2) support a sentence of less than five years of imprisonment. In *United States v. Hunt*, 459 F.3d 1180, 1182 (11th Cir. 2006), the court summarized the factors that must be considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established . . .;
> (5) any pertinent [Sentencing Commission] policy statement . . .;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

As recognized in *Hunt*, there has been a continuing debate among the courts as to how much weight should be given to one of the listed factors, the Sentencing Guidelines. 459 F.3d at 1183-1184. The decision in *Hunt*, however, has resolved the debate for the Eleventh Circuit. In the decision, the court rejected "any across-the-board prescription regarding the appropriate deference to give the guidelines." 459 F.3d at 1184. Rather, a "district court may determine, on

a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." 459 F.3d at 1185. Thus, as recognized by Judge Tjoflat in *United States v. Glover*, 431 F.3d 744, 752-753 (11th Cir. 2005), in some cases the Guidelines may have little persuasive force in light of some of the other § 3553(a) factors:

> Although "judges must still consider the sentencing range contained in the Guidelines, . . . that range is now nothing more than a suggestion that may or may not be persuasive . . . when weighed against the numerous other considerations listed in [§ 3553(a) ]." *Id.* at 787 (Stevens, J., dissenting). Indeed, as one district judge has already observed,
>> the remedial majority in Booker [] direct[s] courts to consider all of the § 3553(a) factors, many of which the guidelines either reject or ignore. For example, under § 3553(a)(1) a sentencing court must consider the "history and characteristics of the defendant." But under the guidelines, courts are generally forbidden to consider the defendant's age, his education and vocational skills, his mental and emotional condition, his physical condition including drug or alcohol dependence, his employment record, his family ties and responsibilities, his socio-economic status, his civic and military contributions, and his lack of guidance as a youth. The guidelines' prohibition of considering these factors cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant.
>
> *United States v. Ranum*, 353 F. Supp. 2d 984, 986 (E.D.Wis.2005) (citations omitted). Thus, mitigating circumstances and substantive policy arguments that were formerly irrelevant in all but the most unusual cases are now potentially relevant in every case.

Some of the statutory factors set for in §3553 play a greater role in Mr. Salum's case than others. Given these factors, there would not seem to be any real need to impose a long period of incarceration "to protect the public from further crimes of [Mr. Salum]." He has led a law-abiding life for many years, he does not appear to present a threat to anyone, his age argues against recidivism, and his poor mental health surely comes close to eliminating it as a possibility.

Any sentence of incarceration serves the more general concern of deterrence and fulfills the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." To consider an individual's mental health and his long productive, law-abiding life cannot be said to undermine the need for deterrence, nor does it fail to reflect the seriousness of the offense. Similarly, to base a sentence

on the practical considerations of Mr. Salum's individual mitigating factors neither undermines the need for deterrence nor fails to reflect the seriousness of the offense. Indeed, sentencing someone such as Mr. Salum to a long prison sentence may even undermine respect for the law.

Thus, the circumstances presented in Mr. Salum's case justify a departure from the Sentencing Guidelines. More importantly, now that the decision in *United States v. Booker*, 543 U.S. 220 (2005) has made the Guidelines advisory and 18 U.S.C. § 3553(a) is now the paramount consideration, the history and characteristics of Mr. Salum show that a sentence that departs from the guidelines is "sufficient but not greater necessary to comply with" the goals of sentencing. Mr. Salum, therefore, requests this Court to impose just such a sentence.

## Mr. Salum's Mental Condition / Status

Mr. Salum has been under the care of a psychiatrist, Dr. William C. Freeman, M.D. Dr. Freeman has diagnosed Mr. Salum as suffering from Major Depressive Disorder. This depressive disorder is recurrent and Mr. Salum is being treated with antidepressant medications, paxil and xanex. Major Depressive Disorder is considered to be a serious mental illness under the DSM-IV-R. Major Depressive Disorder is chronic in nature and is characterized by recurrent episodes of depression, which included depressed or despondent mood, diminished interest in meaningful activities, weight or appetite change, insomnia or hyper-somnia, alterations is psychomeoter activity, lethargy, feelings of worthlessness, diminished ability to concentrate and recurrent thoughts of death. This disorder has effected Mr. Salum to such a degree that during particularly acute episodes of this depression, it renders him unable to think clearly and unable to effectively regulate his emotions.

In addition, Dr. Freeman has diagnosed Mr. Salum with Panic Disorder with Agoraphobia, which is recurrent. This disorder is exacerbated and significantly magnified by the threat of incarceration. Dr. Freeman states that incarceration would be a significant detriment to Mr. Salum's mental status. His symptoms would likely increase causing great anxiety, panic and depression. Dr. Freeman has documented that in the past, Mr. Salum has experienced significant symptoms of both Panic Disorder and Major Depressive Disorder. He was unable to enter the jail setting when incarcerating prisoners and had to rely on the help of other police officers to do that. Dr. Freeman opines that any exposure to a closed in place without the ability to escape causes a marked anxiety to the point of producing a panic attack. This could significantly

increase the chance of Mr. Salum developing suicidal thoughts. Mr. Salum has been suffering from both disorders since 1991.

Any incarceration will greatly intensify Mr. Salum's panic disorder symptoms. Incarceration will surely be very hard on Mr. Salum. Thus, a lengthy prison sentence would serve no useful purpose because incarceration itself will be terrifying to Mr. Salum.

## Conclusion

For the reasons sited above, Mr. Salum respectfully requests that this Court impose a just and fair sentence that is reasonable and sufficient, but not greater than necessary. Mr. Salum respectfully request that the Court impose a sentence well below the guideline range in consideration of the entirety of Mr. Salum character, his complete lack of any prior criminal history, all of his family circumstances, his mental state, that this is one instance of aberrant behavior highly unlikely to ever occur in the future and the likelihood that Mr. Salum has already been punished greatly for the offenses. Such a sentence would be "sufficient but not greater than necessary" to provide just punishment, afford adequate deterrence, protect the public and provide the Defendant with needed rehabilitation as required by 18 U.S.C. § 3553 (a). In this case, a sentence below the guidelines amounts to just punishment in the best tradition of the federal courts and accounts for the unique failings of human beings that, in the words of Justice Kennedy and *Koon v. United States*, "sometime mitigate, sometime magnify, the crime and the punishment to ensue."

                              Respectfully submitted,

*s/Donald M. Sheehan*
**DONALD M. SHEEHAN**
**1500 WEST GARDEN STREET**
**PENSACOLA, FLORIDA 32501**
**TELEPHONE: (850) 432-3034**
**FAX: (850) 432-2540**
**FLORIDA BAR NO.: 464724**
**ATTORNEY FOR DEFENDANT**
**E-Mail: palemoon@sprynet.com**

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: Dixie A. Morrow, Esquire, Special Assistant United States Attorney, 21 East Garden Street, Pensacola, Florida 32532502-3675.

*s/Donald M. Sheehan*
**DONALD M. SHEEHAN**