RECEIVED

JAN  4 2008

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

_____

January 03, 2008

**Appeal Number: 07-10944-CC**
Case Style: USA v. George David Salum, III
District Court Number: 05-00137 CR-F-N

TO:    Debra P. Hackett

CC:    Donald M. Sheehan

CC:    Dixie Angela Morrow

CC:    Robert G. Davies

CC:    E. Bryan Wilson

CC:    Administrative File

# United States Court of Appeals
### Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Thomas K. Kahn
Clerk

For rules and forms visit
www.ca11.uscourts.gov

January 03, 2008

Debra P. Hackett
Clerk, U.S. District Court
15 LEE ST STE 206
MONTGOMERY AL 36104-4055

**Appeal Number: 07-10944-CC**
Case Style: USA v. George David Salum, III
District Court Number: 05-00137 CR-F-N

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued as the mandate of this court.

Also enclosed are the following:
Original Exhibits, consisting of: One Folder, One Sealed Envelope and One psi
Original record on appeal or review, consisting of: Eleven Volumes

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy of this letter enclosed to the clerk.

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being mailed to counsel and pro se parties. A copy of the court's decision was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: Will Miller (404) 335-6194

Encl.

MDT-1 (06/2006)

# United States Court of Appeals
### For the Eleventh Circuit

RECEIVED

JAN 4 2008

No. 07-10944

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

District Court Docket No.
05-00137-CR-F-N

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Dec 4, 2007

THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

          Plaintiff-Appellee,

versus

GEORGE DAVID SALUM, III.,

          Defendant-Appellant.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---------------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
---------------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

          Entered:    December 4, 2007
          For the Court:    Thomas K. Kahn, Clerk
          By:    Jackson, Jarvis



ISSUED AS MANDATE
JAN 0 3 2008
U.S. COURT OF APPEALS
ATLANTA, GA.

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

RECEIVED FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 4, 2007
THOMAS K. KAHN
CLERK

JAN   4 2008

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

No. 07-10944
Non-Argument Calendar

D. C. Docket No. 05-00137-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GEORGE DAVID SALUM, III,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(December 4, 2007)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

George David Salum, III, ("Salum") appeals his convictions for obstruction

of justice and computer fraud in violation of what is known as the "omnibus clause" of 18 U.S.C. § 1503 and 18 U.S.C. §§ 1030 (a)(2)(B) and (c)(2)(B), respectively. For the reasons discussed below, we affirm.

### I. Background

Salum, a former police officer with the Montgomery Police Department ("MPD") was convicted of obstruction of justice and computer fraud for his role in connection with the release of personnel records of former officer Raymond DeJohn.

DeJohn was a member of the Drug Enforcement Agency's ("DEA") task force investigating Leon Carmichael and formerly served as an officer in the MPD. Carmichael was charged with conspiracy to possess with intent to distribute 3,000 kilograms of marijuana. As part of his defense, Carmichael operated a website that posted names and pictures of informants, witnesses, and agents that assisted with the Carmichael case.[1] In the Spring of 2004, the website showed photographs of several potential witnesses, but stated "picture coming" next to DeJohn's name. By late August, 2004 DeJohn's picture was on the website. The photograph was DeJohn's MPD photograph.

The alleged purpose of the website was to gain information on the people

---

[1] The district court denied a motion to order it removed from the internet. The propriety of this order or the First Amendment concerns are not at issue in this appeal.

2

listed on the site. A disclaimer on the website indicated that it was not intended to intimidate witnesses. But DEA Agent Boreland testified at Salum's trial that more than one witness telephoned and expressed concern for their safety as a result of the website, and the DEA installed an electronic surveillance system at DeJohn's residence because of the website. The website was very controversial and was covered in the media.

Exactly how the MPD photograph and other information got into the hands of Carmichael is the foundation of the case against Salum. Carmichael's defense attorney, Stephen R. Glassroth, hired a private investigator, Johnny White, to obtain DeJohn's photograph and his police personnel file. White was also instructed to obtain criminal histories of other government witnesses that were expected to testify against Carmichael.

Salum was a lieutenant with the MPD at the time of these events and knew White. The MPD had access to the National Crime Information Center (NCIC) and the Alabama Criminal Justice Information Service (ACJIS) databases. The NCIC is run by the FBI. MPD rules and regulations limited the release of NCIC/ACJIS and personnel files to only those authorized to have such information. All officers received copies of these rules and regulations. In addition, employees with access to NCIC/ACJIS databases had to undergo training

3

and certification, which included information on the proper use of the system and the proper dissemination of information. The system could be used for criminal justice agency use only in the conduct of official business, which did not include private investigations. Salum received training and certification.

Johnny White had previous law enforcement experience but had not been in law enforcement for several years at the time of the alleged offenses. Testimony at trial suggests that this was widely known, although Salum denied he knew this.

White recruited Salum to obtain DeJohn's files from the MPD. White was friendly with Salum and thought he could trust Salum to keep the request quiet. Salum testified that White did not tell Salum why he needed the information, but White testified that he told Salum it was for Carmichael's case. Salum agreed to help and when he did so, he did not ask for payment in return. According to White, however, when Salum gave the information to White he asked for money and asked White to remove Salum's name from the top of the files.

As far as compensation went—according to White—when Salum produced the documents, White asked what he owed Salum and he replied with the figure of $1,000 to divide between two other officers who helped him get the information. Officer Jay King had copied the 244-page personnel file and Officer Shannon Youngblood obtained DeJohn's picture for Salum. (Significantly, Salum asked

4

Youngblood if DeJohn was a DEA Agent when he asked for the picture. Further, several other officers testified to helping Salum obtain the documents.) According to Salum, he did not ask for money; instead White just gave it to him. Salum testified that White gave him $400, of which Salum gave $200 to King and stated that he intended to give $200 to Youngblood but did not have an opportunity to do so.

Salum testified that he did not know about the website nor did he know why White wanted the information on DeJohn. The prosecutor asked White, "What did Mr. Carmichael tell you he wanted to do to Raymond DeJohn?" White responded that Carmichael wanted to obtain information to discredit DeJohn. Defense counsel objected on hearsay grounds and because Carmichael could not be cross-examined, but the court overruled the objection and permitted the testimony to show motive and intent.

The jury began deliberations at roughly 3 p.m. on the last day of the trial. During the afternoon, the jury issued several questions to the court. First, it asked for clarification on specific intent necessary for obstruction of justice. The court referred the jury to the written instructions. Shortly before 7 p.m., the jury sent a note to the court as follows: "We have made a decision on one of the counts but we have not arrived at a unanimous decision on the other count. We feel that due to

5

some very strong commitments to strong opposing views we do not see a

unanimous verdict forthcoming. Please advise. Jurors have stated that their minds

will not be changed." Defense counsel requested a mistrial on the deadlocked

count. The court determined that an Allen charge would be proper.

The court issued the following charge:

> Ladies and Gentlemen, I am going to ask that you continue your
> deliberation in an effort to reach agreement upon a verdict and dispose
> of this case. And I have a few additional comments I would like for
> you to consider as you do so. This is an important case. The trial has
> been expensive in time, effort, money and emotional strain to both the
> defense and to the government. If you should fail to agree upon a
> verdict the case will be left open and may have to be tried again.
> Obviously another trial would only serve to increase the cost to both
> sides and there's no reason to believe that the case can be tried again
> by either side any better or more exhaustively than it has been tried by
> you. Any future jury must be selected in the same manner and from
> the same source as you were chosen and there's no reason to believe
> that the case could ever be submitted to 12 men and women more
> conscientious, more impartial or more competent to decide it, or that
> more or clearer evidence could be produced. If a substantial majority
> of number are in favor of a conviction, those of you who disagree
> should reconsider whether your doubt is a reasonable one since it
> appears to make no effective impression on the minds of the others.
> On the other hand, if a majority or even a lesser number of you are in
> favor of an acquittal, the rest of you should ask yourselves again and
> most thoughtfully whether you should accept the weight and
> sufficiency of the evidence which fails to convince your fellow jurors
> beyond a reasonable doubt. Remember at all times that no juror is
> expected to give up an honest belief he or she may have as to the
> weight or effect of the evidence. But after full deliberation and
> consideration of the evidence in this case, it is your duty to agree upon
> a verdict if you can do so. You must also remember that if the
> evidence in the case fails to establish guilt beyond a reasonable doubt,

the Defendant should have your unanimous verdict of not guilty. You may be as leisurely in your deliberation as occasion may require and you should take all of the time which you may feel is necessary.

Defense counsel again requested a mistrial, which the court denied. During further deliberations, the jury again questioned the specific intent necessary for the obstruction of justice offense. The court referred the jury to the written instructions, and then asked whether they wished to continue deliberations that evening or the following workday, or if they remained deadlocked. The jury responded that it would continue deliberations that evening. At 9 p.m., the jury returned a verdict of guilty on both counts. Salum was sentenced to 30 months imprisonment.

Salum now appeals on three grounds: He argues that (1) there was insufficient evidence to establish the offenses of obstruction of justice (count 1) and computer fraud (count 2); (2) the denial of the motion for mistrial for giving the Allen charge was error; and (3) the district court erred by admitting testimonial hearsay barred by the Confrontation Clause.

## II. Standard of Review

We review sufficiency of the evidence claims de novo. We "resolve all reasonable inferences in favor of the jury's verdict." United States v. Eckhardt, 466 F.3d 938, 944 (11th Cir. 2006), cert. denied, 127 S.Ct. 1305 (2007). "The relevant

7

question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Id. (quotation omitted); see also United States

v. Descent, 292 F.3d 703, 706 (11th Cir. 2002). Credibility of a witness is within

the province of the jury. United States v. Parrado, 911 F.2d 1567, 1571 (11th Cir.

1990). "[W]hen a defendant chooses to testify, [s]he runs the risk that if

disbelieved the jury might conclude the opposite of [her] testimony is true."

United States v. Turner, 474 F.3d 1265, 1280 (11th Cir. 2007). "[A] statement by

a defendant, if disbelieved by the jury, may be considered as substantive evidence

of the defendant's guilt." United States v. Brown, 53 F.3d 312, 314 (11th Cir.

1995). "Where some corroborative evidence of guilt exists for the charged offense .

. . and the defendant takes the stand . . . the Defendant's testimony, denying guilt,

may establish, by itself, elements of the offense." Id. at 315. "This rule applies

with special force where the elements to be proved for a conviction include highly

subjective elements: for example, the defendant's intent or knowledge." Id.

Review of a district court's decision to give an Allen charge is limited to

evaluating the coercive impact of the charge. The question this court addresses is

whether under the circumstances and language of the Allen charge the jury was

unduly coerced into reaching a verdict. United States v. Elkins, 885 F.2d 775, 783

(11th Cir. 1989).

Determinations of the admissibility of evidence are in the discretion of the trial judge and will not be reversed by an appellate court unless it finds an abuse of discretion. United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002).

### III. Discussion

*a. Insufficient Evidence*

### Count 1

To prove obstruction of justice under the omnibus clause, the government must show that the defendant (1) endeavored; (2) to influence , obstruct, or impede the due administration of justice; (3) in a corrupt manner or by threats. United States v. Barfield, 999 F.2d 1520, 1522 (11th Cir. 1993).

"All the government has to establish [to prove the first element] is that the defendant should have reasonably foreseen that the natural and probable consequence of the success of his scheme would [obstruct the due administration of justice]." United States v. Fields, 838 F.2d 1571, 1573 (11th Cir. 1988). The second element is broad and has been interpreted to be such. United States v. London, 714 F.2d 1558, 1566-1567 (11th Cir. 1983). It was "drafted with an eye to 'the variety of corrupt methods by which the proper administration of justice may be impeded or thwarted, a variety limited only by the imagination of the

9

criminally inclined.'" Id. Gathering information to assist a criminal defendant in creating a website for the purpose of intimidating witnesses certainly falls within this broad scope. The term "corrupt" has been interpreted to describe the specific intent of the crime—that the defendant acted willfully. Barfield, 999 F.2d at 1524-1525.

At trial, White testified that he told Salum that he was working on the Carmichael case and asked Salum to "look into the people on the website [to see] if they had any criminal history with the city or if there was anything in DeJohn's personnel file that could have been negative to the defense as far as any police misconduct or stuff like that." Testimony at trial also established that the website was well publicized in the Montgomery area. And Youngblood testified that Salum asked Youngblood if DeJohn was a DEA agent. From these facts, it was possible for the jury to conclude that Salum knew why he was researching these individuals and providing the information to White.

The jury also heard testimony that the individuals on the website feared for their safety, and the jury could have inferred that at least one of the purposes (if not the sole purpose) of the website was to intimidate the witnesses. Also damaging to Salum is the fact that he testified and denied that he knew the purpose of the investigation. By choosing to testify Salum ran the risk that the jury would

10

disbelieve his statements, and his testimony was substantive evidence of his intent and his guilt. See Brown, 53 F.3d at 315.

A jury could have concluded from this evidence, therefore, that Salum knew the purpose of his investigation, corruptly conducted the investigation, and could reasonably foresee that the natural and probable consequence of the success of his scheme would obstruct justice. Thus, sufficient evidence existed to convict Salum of obstruction of justice.

### Count 2

To prove computer fraud in violation of Sections 1030(a)(2)(B) and (c)(2)(B), the government must prove that the defendant (1) intentionally accessed a computer without authorization or in excess of his authorization, (2) thereby obtaining information from a federal department or agency, (3) for the purpose of commercial advantage or private financial gain or in furtherance of any criminal or tortuous act in violation of the Constitution or laws of the United States or of any State.

Here, the evidence was sufficient to establish Salum's guilt. The NCIC is operated by the FBI and Salum did not dispute that he obtained information from a department or agency of the United States. Testimony established that it was well known that White was no longer in law enforcement. Salum admitted that he knew

11

White worked as a private investigator and the jury could infer from Salum's testimony that he knew White was not a law enforcement officer. And although Salum may have had authority to access the NCIC database, there was sufficient evidence to establish that he knew White was working for Carmichael and that by providing information from the NCIC database, Salum exceeded his authority by accessing it for an improper purpose.

A jury also could have reasonably concluded from the evidence that Salum gave White the information for either Salum's financial gain or in violation of the law. First, the evidence established that White gave Salum money. White testified that Salum demanded $1,000 to pay the two police officers that helped him—King and Youngblood. But Salum testified that he received only $400 from White, that he gave $200 to King, and that he was going to give the other $200 to Youngblood but did not have a chance. King denied receiving any money from Salum. From the inconsistency of the testimony, the jury could have inferred that Salum intended to financially gain from providing the information to White. Moreover, the jury could have inferred from Salum's testimony the opposite of what he said.

Second, the jury could have also concluded that Salum gave the information to White in furtherance of a criminal act, namely, to interfere with the judicial proceedings against Carmichael.

For the above reasons, we conclude that sufficient evidence existed for the jury to find Salum guilty of computer fraud.

*b. Allen Charge*

Salum next argues that the court erred by denying his motion for a mistrial because the court's Allen charge was coercive in light of the length of the deliberations and considering the totality of the circumstances.

The question the court addresses in reviewing a district court's rendering of an Allen charge is whether under the circumstances and language of the Allen charge the jury was unduly coerced into reaching a verdict. United States v. Elkins, 885 F.2d 775, 783 (11th Cir. 1989). When the district court does not poll the jury prior to reading the Allen charge, we will reverse only if we conclude under the totality of the circumstances that the charge was inherently coercive. United States v. Chigbo, 38 F.3d 543, 545 (11th Cir. 1994); see also United States v. Trujillo, 146 F.3d 838, 846 (11th Cir. 1998). In United States v. Scruggs, 583 F.2d 238, 240-41 (5th Cir. 1978)[2], the former Fifth Circuit held that an Allen charge given after four and a half hours of deliberations and which was read forty-

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

eight minutes before the jury returned a verdict was not coercive. In <u>Brooks v. Bay State Abrasive Products, Inc.</u>, 516 F.2d 1003 (5th Cir. 1975), the jury deliberated for three and a half hours and returned a verdict less than thirty minutes after hearing the Allen charge. And in <u>Chigbo</u>, this court concluded that thirty minutes between the charge and the verdict was not enough to find the charge coercive.

Here, we conclude that the charge was not inherently coercive. This court repeatedly has upheld this pattern Allen charge. <u>See</u> <u>Dickerson</u>, 248 F.3d at 1050; <u>Trujillo</u>, 146 F.3d at 846-47; <u>Chigbo</u>, 38 F.3d at 545-56. Moreover, the context in which the charge was given does not appear to be coercive. The judge urged the jurors to reconsider and gave them the choice of continuing deliberations that evening, continuing the following day, or ceasing deliberations if the jury was hopelessly deadlocked. The jurors had deliberated for roughly four hours before the charge was given and they returned a verdict about two hours later. Given this court's precedent, we cannot find error with the Allen charge.

*c. Hearsay and Confrontation Clause*

Finally, Salum argues that the district court erred by admitting testimony that he claims is hearsay and violates the Confrontation Clause. At trial, the prosecutor asked White "What did Carmichael tell you he wanted to do to

14

Raymond DeJohn?" Salum's counsel objected on both hearsay and confrontation clause grounds, but the court admitted the statement "to show motive or intent."[3]

The court did not err by allowing White to testify. First, the statement was not offered for the truth of the matter asserted. The judge admitted the statement only for the purpose of showing White's motive or intent. It does not matter whether Carmichael really did want to discredit DeJohn. What matters is what Carmichael told White. Therefore, the district court did not err by admitting the statement. Further, even if this was error, it was harmless as White's intent is completely irrelevant to determine Salum's intent because White testified that he never told Salum why he wanted DeJohn's information.

Second, in order to violate the Confrontation Clause, a statement must be testimonial and must be offered for the truth of the matter asserted. See Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004). Because White's statement was neither, there is no Confrontation Clause issue here.

### IV. Conclusion

For the reasons above, we **AFFIRM**.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By
Deputy Clerk
Atlanta, Georgia

---

[3] The parties dispute whether Salum properly objected on Confrontation Clause grounds and, thus, disagree as to the proper standard of review. We do not need to address this matter because the district court did not err under either plain error or abuse of discretion standard.

15